## HULL v HILLSBOROUGH COUNTY, FLORIDA, et al.

### Case No. 90-18087

Thirteenth Judicial Circuit, Hillsborough County

August 27, 1990

#### APPEARANCES OF COUNSEL

**Robert W. Merkle, Esquire,** for plaintiff.

**Lynn Cash, Esquire, W. Crosby Few, Esquire,** and **John Lawson, Esquire,** for defendants.

#### OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

#### ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION

This cause came on for consideration of Plaintiff, Carolyn Brice Hull's motion for Temporary Injunction and Complaint seeking declaratory and injunctive relief. This action concerns the propriety of the September 4, 1990, Hillsborough County School Board elections.

#### Facts

Plaintiff, Carolyn Brice Hull, is a candidate for a seat on the School

Board of Hillsborough County. She is seeking to enjoin the September 4, 1990, School Board election and requests that the Court postpone the election. Ms. Hull contends she was unfairly disadvantaged in her campaign for a seat on the School Board by the recent court order changing the status of the elections from partisan to nonpartisan. She also asserts that she is entitled to relief because the Supervisor of Elections has failed to comply with the statutory requirement that overseas absentee ballots be mailed at least 35 days prior to the election date.

Under Chapter 67-945, Laws of Florida, as amended under Chapter 75-393, Laws of Florida, school board elections in Hillsborough County have been nonpartisan since 1967. In July of 1989, the Florida Supreme Court in *Kane v Robbins,* 556 So.2d 1381 (Fla. 1989) ruled that a special law that established nonpartisan school board elections in Martin County violated article II, section 11(a)(1) of the Florida Constitution. Consequently, on June 5, 1990, the School Board of Hillsborough County filed a complaint with this court, asking the court to determine whether Chapter 67-945, Laws of Florida, would similarly be invalidated under the Florida Constitution.

On July 16, 1990, the first day of qualifying for the 1990 elections, the Honorable Daniel E. Gallagher, Circuit Judge, Thirteenth Judicial Circuit, entered an Interim Order declaring Chapter 67-945, Laws of Florida, unconstitutional and directing the Supervisor of Elections to qualify candidates for the Office of School Board of Hillsborough County on a partisan basis. The Order did not specifically address the timing of the election.

On July 16,1990, Carolyn Brice Hill entered the race. (There is a discrepancy regarding what date Ms. Hull entered the race. Plaintiff's affidavit states that she entered on July 16, 1990, while the complaint states that she qualified on July 19, 1990). She qualified as both a partisan and nonpartisan candidate for the District 6 School Board. She was the only Republican running for that seat and was opposed by two Democratic candidates. According to Ms. Hull's affidavit, she chose to refrain from campaigning between July 16 and August 2, 1990, pending the ultimate resolution of whether the election would be partisan or nonpartisan.

On or before July 31, 1990, approximately 1,400 absentee ballots for the September 4, 1990 First Primary elections were mailed out by the Office of the Supervisor of Elections, 318 of which went overseas. The Democratic candidates running for the School Board in District 6 were indicated on the Democratic Primary ballots. The Republican race for

208

the School Board seat in District 6 was uncontested. Therefore, Ms. Hull did not appear on the Republican absentee ballots for the September 4, 1990 First Primary mailed on or before July 31, 1990.

On August 2, 1990, Judge Gallagher reversed his July 16, 1990 decision and ordered that the election be conducted on a nonpartisan basis in reliance on the Supreme Court's ruling in *School Board of Palm Beach County, Florida v Winchester,* Case No. 75,345 (July 27, 1990). In addition, the court ordered that the absentee ballots previously mailed by the Supervisor of Elections be void and that new absentee ballots for the District 6 School Board be printed and mailed. The court reversed jurisdiction to resolve any Canvassing Board's questions regarding the issuance of the absentee ballots.

The replacement absentee ballots were mailed on August 4, 1990. The ballots included the names of the three candidates without indication of the candidate's party affiliation. The school board election is scheduled for September 4, 1990 in compliance with Chapter 67-945, Laws of Florida, as amended by Chapter 75-393, Laws of Florida.

### Issues

Plaintiff seeks to enjoin the election on two grounds. First, she asserts that she faces an unfair advantage that will result in substantial injury to her and to the public if the election is allowed to proceed on September 4. She states that she postponed her campaigning activities in reliance on a November 6, 1990, election date and, therefore, is now faced with insufficient time to campaign. She also alleges that her opponents have the benefit of public awareness of their party affiliation and that their campaign materials identify their party affiliation, whereas hers do not. If the September 4, 1990, election date is complied with, plaintiff argues that her opponents will have an advantage because the voter turnout is likely to be highly democratic due to the hotly contested Bill Nelson/Lawton Chiles race for the democratic nomination for Governor.

Plaintiff also challenges the validity of the issuance of the new absentee ballots. She asserts that the August 4, 1990, mailing of replacement ballots violates the Florida Statute Section 101.62(4)(a). This section provides that absentee ballots to overseas voters shall be mailed no less than 35 days prior to the election date. In this case, the replacement ballots were mailed 31 days prior to September 4, 1990. Plaintiff also argued that the mailing has deprived the voters of critical information since the absentee voters may not receive campaign information before casting their votes. However, as of August 20, 1990, the

Plaintiff, Carolyn Brice Hull, was the only candidate to receive mailing labels for absentee voters from the Supervisor of Elections.

On these grounds, Plaintiff requests that the court determine whether the election illegally contravenes Florida Statute Section 101.62(4)(a) and temporarily and permanently enjoin the election. It is not clear on which date Plaintiff requests that the election be held. In her complaint, Plaintiff seeks postponement of the election until November 6, 1990; In her Motion for Temporary Injunction, filed with her complaint, she seeks an October 2, 1990 election date.

Defendant, School Board of Hillsborough County, moved to dismiss Plaintiff's complaint on the ground that Plaintiff has not made the required showing for the court to properly restrain an election, and therefore the court does not have the power to issue the injunction. Defendant argues that Plaintiff has neither shown substantial injury nor a violation of law. The election schedule, Defendant asserts, complies with Florida law. Defendant also contends that the irregularity in the absentee ballot schedule does not invalidate the election because the legislative absentee ballot provisions are directory rather than mandatory, and the Supervisor's substantial compliance with the provisions was sufficient.

## The Law

The general rule under Florida law is that a court may not restrain the holding of an election. *City of De Land v Fearington,* 146 So. 573 (Fla. 1933). However, Florida recognizes two exceptions to this rule: (1) if an election is held in violation of law or contrary to well-established legal requirements, or (2) if it would result in substantial injury to any suitor or the public generally, then the court may on proper showing enjoin the election if no adequate remedy exists at law. *Id.; Dulaney v City of Miami Beach,* 96 So.2d 550 (Fla. 3d DCA 1957). Plaintiff has failed to make a proper showing that either of these grounds for an exceptions exists.

### 1. *September 4, 1990, election is not in violation of the law*

The September 4, 1990, date for the first election to the school board is proper. Chapter 67-945, Laws of Florida, as amended in Chapter 75-393, Laws of Florida, specifically provides that election of school board members shall be held at the same time as the first primary election, and if no candidate receives a majority of votes at that election, a runoff election will be held at the same time as the second primary election. Therefore, the Supervisor of Elections was following proper procedure in calling the election on September 4, 1990.

210

In addition, the plaintiff is not entitled to injunctive relief on the basis that the absentee ballots were sent more than 35 days before the September 4 election date. Substantial compliance with the voting law, even mandatory provisions, is sufficient under Florida law. *Boardman v Esteva,* 323 So.2d 259 (Fla. 1975); *State v Latham,* 170 So. 472 (Fla. 1936). This fundamental inquiry in determining whether noncompliance will invalidate the election is "whether or not the irregularity has prevented the full, fair and free expression of the public will." *Boardman,* at 265. The statute is interpreted as directory rather than mandatory and the factors to be considered in determining whether to invalidate an absentee ballot based on procedural irregularities include:

(a) The presence or absence of fraud, gross negligence, or intentional wrongdoing;

(b) Whether there has been substantial compliance with the essential requirements of the absentee voting law;

(c) Whether the irregularities complained of adversely affect the sanctity of the ballot and the integrity of the election.

*Id.* at 269. In this case, the original mailing complied with the 35-day requirement but the replacement ballots fell four days short of meeting 35 days. Four days difference is not the type of irregularity that should invalidate the election. The will of the voters has not been thwarted. In addition, an irregularity in the Supervisor's mailing procedure has been found insufficient to invalidate an absentee vote. *McLean v Bellamy,* 437 So.2d 737 (Fla. 1st DCA 1983) (absentee ballots were not required to be invalidated for having been sent out without being requested).

## 2. *The Plaintiff did not show substantial injury*

The Plaintiff alleges that she will suffer substantial injury as a result of having less time to campaign than her opponents. This argument is not persuasive. All candidates were given the same opportunity to campaign from the date of qualification. Plaintiff alleges in her affidavit that she chose not to begin her campaign activities until the issue of whether the elections were to be partisan or nonpartisan was ultimately resolved by the court. Plaintiff's choice not to campaign can not now be rectified by the court. The same is true of Plaintiff's argument that she is disadvantaged because her party affiliation is not known to the voters and that of her opponents is. The same opportunities were available to all of the candidates to campaign and to identify their party affiliation at the time the election was declared a partisan election, and, therefore, the Plaintiff has not suffered a deprivation of legally recognized right.

211

Similarly, Plaintiff's argument that she is disadvantaged because she believed that she had until November 6, 1990, to campaign does not provide a basis for relief. The court recognizes the unusual circumstances of this case and the fact that the actual election dates and conditions were temporarily unsettled. However, all candidates have been subject to the same conditions. At no time was Plaintiff specifically precluded from campaigning. The timing of school board elections are specifically set out in Chapter 67-945, as amended by Chapter 75-393. At no time did the court indicate that these timing provisions would not apply if the elections were ultimately determined to be nonpartisan. Plaintiff admits in her affidavit that she was aware of the possibility that the Interim Order could be overturned and nonpartisan elections reinstated. Thus, she is not entitled to relief on the grounds that a September 4, 1990 election date was not foreseeable to her.

Plaintiff's other allegations of injury are not actionable. The fact that absentee votes were cast before she had an opportunity to campaign does not indicate a particular or substantial injury. The Supervisor is not required to ensure that campaign materials reach absentee voters before the ballots. Also, the Supervisor's files indicate that Plaintiff was the only candidate to purchase mailing labels for the absentee voters so it is likely that she is the only candidate to have mailed campaign information to any of the absentee voters. Therefore, she has suffered no particular disadvantage.

Finally, Plaintiff points out that she will be particularly disadvantaged if the election is held on September 4, 1990, because the voter turnout is likely to be disproportionately Democratic because of the hotly contested Lawton Chiles/Bill Nelson race. She states that her opponents have identified themselves with the Democratic party. However, the court has no discretion to restrain elections on such political considerations.

The court would note, parenthetically, that should the Plaintiff's request be postpone the election to November be granted and that election require a runoff, a special election would have to be called at a cost of over $100,000 to the taxpayers of this community. From experience, this court would also note that such a special election would more likely than not have a voter turnout of less than ten percent of the registered voters. Under these conditions, a November election would likely invite unfair results at unreasonable cost.

## Conclusion

Therefore, Plaintiff has failed to show either a violation of law or

212

substantial injury to empower the court to enjoin the upcoming school board elections. It is therefore,

ORDERED AND ADJUDGED that the Plaintiff's request for relief is denied.

DONE AND ORDERED this 27th day of August, 1990.